UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - -x
MOTOROLA CREDIT CORPORATION and
NOKIA CORPORATION,

    Plaintiffs,       02-cv-666 (JSR)

 v.           MEMORANDUM ORDER
             UNDER SEAL
KEMAL UZAN, et al.,

    Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - -x

JED S. RAKOFF, U.S.D.J.

  The Uzan defendants in this case continue to try to evade payment of the judgment long ago awarded plaintiffs. They seek to effectuate such evasion by, among other ways, making use of complicit third parties and other agents (the "Uzan Proxies") to hide Uzan funds and undertake Uzan transactions. But it does not follow that any third party that has any connection, direct or indirect, with the Uzan defendants is an Uzan Proxy. Thus, in the proceeding that is the subject of this Memorandum Order, Jordan Dubai Islamic Bank ("JDIB") challenges plaintiffs' contention that it serves as such a proxy.

  By way of background, on December 16, 2013, the Court granted JDIB's motion to intervene in this action under Rule 24(a)(2) of the Federal Rules of Civil Procedure, a motion that the Court

1

granted only after JDIB submitted to the Court's jurisdiction. Since that time, plaintiff and judgment creditor Motorola Solutions Credit Company LLC f/k/a Motorola Credit Corporation ("Motorola") has obtained from JDIB extensive Court-ordered discovery, including ten depositions and 18,000 pages of documents, relating to whether JDIB is an Uzan Proxy. Such discovery was appropriate since, even though the Court had previously determined that JDIB was an Uzan Proxy and had listed JDIB on Attachment A to the Court's February 13, 2013 Injunction and Restraining Order, this determination was made on an *ex parte* basis using information informally obtained by Motorola's private investigation and untested by the adversarial process.

The relief JDIB seeks in its instant "Complaint in Intervention" (effectively a motion) is, principally, that it be de-listed from the list of Uzan Proxies subject to the Court's February 13, 2013 Order. Although JDIB has the burden of going forward on this application, Motorola bears the ultimate burden of showing, by a preponderance of evidence and exclusive of any *ex parte* submissions, that JDIB is effectively an agent of the judgment debtors. See Apr. 11, 2014 Tr. at 2:16-17. For the reasons that follow, the Court finds that JDIB has not been an Uzan Proxy

since August 2013 and accordingly grants JDIB corresponding declaratory and equitable relief as described below.

The facts necessary to this resolution of the instant matter are not in dispute. For present purposes, JDIB accepts that it is likely that the Uzans, through their acquisition of HPF Private Investment Fund Company Ltd. ("HPF") in July 2012, became the true owners of Jordan Decapolis Capital ("JDC") and its subsidiary Al Hilal Islamic Investments ("Al Hilal"), which in turn own 60% of Mesk Investment Co. ("Mesk"), which in further turn owns 52% of JDIB. JDIB concedes that the 31.2% ownership stake in JDIB held by HPF is therefore properly classified as "Uzan Property" presumptively subject to attachment.

As to JDIB as a whole, however, the parties do dispute whether this ownership stake previously gave the Uzans, through the upstream entities, the ability to control four or, instead, six of the eleven JDIB board seats. There are interesting legal and factual issues that might need to be considered if this dispute were dispositive — e.g., whether (if the right number is four) the Uzans could still effectively control the company even without a board majority, or whether (if the right number is six) even having a board majority allowed the Uzans to effectively control the company. But the Court does not need to reach these questions,

3

because of resignations from the board, and accompanying transfers of responsibility, that occurred around August 2013. Prior to that time, Maher Shamieh, a core Uzan Proxy whose relationship with the Uzans stretches back to the very Telsim fraud from which the instant judgment arises, served on the JDIB board, and was joined on the board by another Uzan confidante, Ismail Tahboub, as a designee of Al Hilal. But under pressure ultimately tracing back to this Court's attachment orders and more immediately brought to bear by the Central Bank of Jordan, Shamieh resigned on August 1, 2013, Tahboub resigned on August 4, 2013, and the two other Mesk-nominated board members (who had less apparent ties to the Uzans) resigned shortly thereafter.

The results of these resignations were striking. For example, before the resignations, Maher Shamieh lobbied furiously against JDIB's submitting to the jurisdiction of this Court. See Letter to JDIB Board from Maher Shamieh dated June 6, 2013, Bates No. JDIB00011160-62 (warning that intervention might violate Jordanian or Sharia law). And HPF demanded that the two Mesk nominees oppose intervention. See Letter to Salem Khazaleh from HPF Chief Legal Counsel dated May 30, 2013, Bates No. JDIB00001956-58 (threatening "to replace you as our nominee on the Board of the Bank" if Khazaleh takes any action resulting in "the creation of

4

jurisdiction" outside of Jordan or Hong Kong).[1] But after the Uzan-related board members were forced to resign, the remaining JDIB board members chose to have JDIB submit to this Court's jurisdiction.

Equally telling is what happened next. Cem Uzan complained bitterly to the Sharia Supervisory Board. See Declaration of George R. Calhoun, V, dated April 28, 2014, Ex. 12, Letter from Cem Uzan to Sharia Supervisory Board (JDIB, by intervening, "has been not only violating the Laws of the Hashemite Kingdom of Jordan, but more importantly, has been violating Sharia, and thus endangering the Sharia Compliance of JDIB. . . . As a result of exactly such an action, JDIB has involved itself in a legal case in New York, and the people at JDIB, without looking at the facts, without determining what is right, and what is lawful, have submitted themselves to the Orders of the Jewish Judge Rakoff. . . . [T]his is not only a violation of Jordanian Law, but more importantly a violation of Sharia."). But the very fact that the Uzans were reduced to trying, unsuccessfully, to have the Sharia Supervisory Board bring pressure on JDIB not to submit to the jurisdiction of

---

[1] Avoiding the jurisdiction of the U.S. courts is a longtime tactic of the Uzans, and, indeed, in both these letters the Court perceives the hand of Cem Uzan, whose many unsolicited missives to the Court share not just the identical substance on jurisdiction but also the same fonts, bolded double-underlines, dramatic tone, and word choices.

this Court is strong evidence that the Uzans no longer had meaningful influence over JDIB.

Further still, JDIB went ahead and froze ten accounts containing Uzan Property in compliance with this Court's Injunction and Restraining Order, a move JDIB would have been unlikely to have taken if it was under Uzan control.

Independently, moreover, Motorola, in pursuing Mareva Orders granted by the High Courts of Singapore and Hong Kong, obtained receivership orders that placed HPF and JDC under the control of receivers appointed by those courts as of February 18, 2014. The receivership appointment "brings all of the defendant's property under the exclusive control of the court and the receiver." Consol. Rail Corp. v. Fore River Ry., 861 F.2d 322, 326-27 (1st Cir. 1988). While the receivership process may take some time, at the end of which the Uzans' interest in JDIB may be extinguished, even now the Uzans cannot exercise effective control over HPF and its downstream entities.

It is clear, therefore, that JDIB has not been an Uzan Proxy since August 2013. Sensing, perhaps, the weakness of its claim to the contrary, Motorola now seeks belatedly to contest this Court's jurisdiction over this matter, nearly six months after opposing JDIB's intervention on the merits and after several months of

Court-ordered discovery of JDIB requested by Motorola. The argument Motorola so tardily raises is that this Court lacks jurisdiction because of an appeal to the Second Circuit from another order of this Court in a tangentially related matter involving Motorola and Standard Chartered Bank — an appeal Motorola filed on June 28, 2013.

The argument is frivolous. Quite aside from the fact that the parties are different, the issue on appeal in the Standard Chartered case is whether New York's so-called "separate-entity rule" is still good law. This has nothing to do with the question here at issue of whether JDIB is still an Uzan Proxy; indeed, even the issue of whether JDIB was ever an Uzan Proxy is not even remotely an issue in the Standard Chartered appeal.[2] And of course, because the relief granted here declares that JDIB is not an Uzan Proxy only after August 2013, it in no way calls into question or changes the posture of any Standard Chartered Bank restraint of JDIB property, which occurred before that date. See, e.g., Int'l Paper Co. v. Whitson, 595 F.2d 559 (10th Cir. 1979).

---

[2] Motorola itself put it well when it argued before the Second Circuit that Standard Chartered Bank had "not challenge[d] Motorola's assertion or the District Court's determination that JDIB is an Uzan Proxy (and SCB would have lacked standing to do have done so)." JDIB Reply Mem. dated May 2, 2014, Ex. 1 at 15.

7

Additionally, the jurisdiction divestment rule is a "judicially crafted rule . . . [and] is not automatic," United States v. Rodgers, 101 F.3d 247, 152 (2d Cir. 1996), which means that it can be waived. Motorola, by not raising this argument when JDIB intervened, but, instead, taking advantage of this Court's jurisdiction to secure extensive discovery from JDIB on the issue of its alleged role as an Uzan Proxy, waived the objection. See, e.g., Certain Underwriters at Lloyds v. Cravens Dargan & Co., 197 F. App'x 645, 646 (9th Cir. 2006). For all these reasons, JDIB's motion for relief is properly before the Court.

In summary, the Court finds that JDIB has not been an Uzan Proxy since August 2013, and is entitled to the declaratory relief of being removed from Attachment A to the Injunction and Restraining Order. As a consequence, Motorola is hereby directed to advise all those who have received the Injunction and Restraining Order, within one week of the date of this Memorandum Order, that JDIB is no longer listed on Attachment A and that any restraint imposed on JDIB property in and after August 2013 is hereby lifted. Additionally, Motorola must promptly submit to this Court for its

approval and filing under seal an updated version of Attachment A that does not include JDIB.[3]

SO ORDERED.

Dated: New York, New York
August 21, 2014

_____
JED S. RAKOFF, U.S.D.J.

---

[3] It should be noted, however, that the Injunction and Restraining Order nevertheless remains applicable to JDIB to the extent it serves as a holder of Uzan Property, and JDIB is therefore directed to continue complying with that Injunction and Restraining Order by, inter alia, restraining the ten frozen Uzan accounts and facilitating the transfer to Motorola of the 31.2% Uzans' indirect ownership stake in JDIB.