UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

MOTOROLA CREDIT CORP., et al.,

        Plaintiff,

  -v-

KEMAL UZAN, et al.,

        Defendants.

Civil Action No. 02-cv-0666 (JSR)(FM)

---

# INTERVENER SINAN KEMAL UZAN'S MOTION TO VACATE ORDER EXTENDING RESTRAINTS

---

**LOWENSTEIN SANDLER LLP**
1251 Avenue of the Americas
New York, New York  10020
(212) 262-6700
Zachary D. Rosenbaum
Ryan M. Wilson
*Attorneys for Intervener Sinan Kemal Uzan*

Intervener Sinan Kemal Uzan ("Sinan") respectfully moves, pursuant to Federal Rules of Civil Procedure ("FRCP") 69(a) and New York Civil Practice Law and Rules ("CPLR") §§ 5222(b) and 5240, to vacate the January 22, 2015 order extending the restraints currently in place on Sinan's assets.

**PRELIMINARY STATEMENT**

On February 13, 2013, the Court issued an *Ex Parte* Order Granting Injunctive Relief and a Restraining Order (the "*Ex Parte* Restraining Order") against Sinan pursuant to FRCP 65 and CPRL § 5222(b). Pursuant to the *Ex Parte* Restraining Order, Motorola Credit Corp. ("Motorola") has restrained three categories of Sinan's assets to which the January 22, 2015 Order applies (collectively, the "Restrained Property"): (1) a savings account (the "Chase Savings Account") and checking account (the "Chase Checking Account") held by Sinan at JPMorgan Chase (collectively, the "Chase Accounts"); (2) the assets of Ankaa LLC ("Ankaa"), an entity in which Sinan is the sole member; and (3) Sinan's PayPal account.

An Order extending the restraints on the Restrained Property was entered on January 22, 2015 (the "Extension Order") based on an *ex parte* application made under seal by Motorola. Sinan has since obtained the Extension Order and, through, this application seeks to vacate it as it pertains to his Restrained Property.

CPLR § 5222(b) and the cases applying it dictate that a restraint on Sinan's assets is effective only if a judgment debtor has a direct interest in the asset to be restrained. Once a third-party restraint is issued, CPLR § 5222(b) further requires that the restraint expires by its own terms after one year. In order to extend a restraint under CPLR §§ 5222 and 5240, the judgment creditor (here, Motorola) must demonstrate the necessity of the extension, which is a

1

burden that, as a matter of law, cannot be satisfied if the judgment creditor cannot show that it would be entitled to execute on the property restrained.

While Motorola has taken extremely broad discovery from Sinan and a multitude of third parties, Motorola has not come forward with a shred of evidence that reflects any Judgment Debtor's interest in such Restrained Property. This is because the Judgment Debtors have no interest, direct or otherwise, in the Restrained Property. The Court should therefore, vacate the Extension Order as it pertains to Sinan's Restrained Property.

## FACTS AND PROCEDURAL BACKGROUND

### A.   *Procedural History of the Restraints on the Restrained Property*

The *Ex Parte* Restraining Order cites to and states that it was issued under CPLR § 5222.[1] Using the *Ex Parte* Restraining Order, Motorola, without notice to Sinan, restrained the Restrained Property in mid to late 2013.[2] Verified Complaint in Intervention ("Verified Complaint"), Docket No. 954 ¶ 21-25; Transcript of May 29-30 Evidentiary Hearing ("Hearing Tr.") at 335:11-13.

On January 16, 2014, Sinan formally moved to intervene in the Litigation. By Order entered on April 4, 2014, Sinan was permitted to intervene. An evidentiary hearing was held on May 29th to 30th, 2014, addressing the issue of whether Sinan is an "Uzan Proxy" (the "Evidentiary Hearing"). The Court's decision with respect to that hearing is subjudice.

---

[1] It is Sinan's understanding that the *Ex Parte* Restraining Order remains under seal and therefore he has not submitted it as an attachment to this motion. However, should the Court need a copy of the order, Sinan will gladly file a copy under seal.

[2] Prior to current counsel's appearance in this matter, Motorola also restrained and turned over an account held by Sinan at Bank of America. On prior counsel's advice in light of the economics of the situation, and based on the erroneous belief that Motorola would not continue to pursue him without cause, Sinan did not contest the turnover of that asset. Verified Complaint, Docket No. 954, ¶¶ 20-21.

On January 16, 2015, Motorola, without notice to Sinan, applied for an extension of the restraints on Sinan's Restrained Property. *See* Motorola's *Ex Parte* Application for Order Extending Duration of Restraining Notices, Docket No. 1054. In its January 16, 2015 application Motorola presented no evidence that any Judgment Debtor has an interest in the Restrained Property. On January 22, 2015, the Court issued the Extension Order. *See* Extension Order, Docket No. 1055. The Extension Order appeared briefly on the public docket, but was removed and filed under seal. The Extension Order remains under seal, though Sinan has obtained a copy from Motorola.

***Evidence Regarding Interest in the Restrained Property***

***The Chase Accounts***

Sinan opened the Chase Accounts in or about March 2013. Verified Complaint, Docket No. 954, ¶ 22. At all times prior to it being frozen, the sole source for all funds in the Chase Savings Account was an account held by Sinan's maternal family at Burgan Bank in Istanbul, Turkey (the "Burgan Account").[3] Declaration of Sinan Uzan in Support of Motion to Intervene, Challenge Restraining Order and Injunction, and Obtain Evidence ("Sinan Decl."), Docket No. 957, Ex. 2; Intervener's Evidentiary Hearing Exhibit ("Intervener's Ex.") 10. As the account documents themselves conclusively reflect, each deposit into the Chase Savings Account from its inception reflects the name of and identifying information for the Burgan Account. Intervener's Ex. 10. Further, Sinan's testimony, as well as the testimony of Sinan's mother, Sebnem Berker, one of the joint holders of the Burgan Account,[4] at the Evidentiary Hearing,

---

[3] There were also *de minimus* amounts resulting from interest payments.

[4] In addition to Ms. Berker, the other joint holders of the Burgan Account are Ms. Berker's sister, mother, and father *i.e.*, Sinan's maternal aunt, grandmother, and grandfather. Hearing Tr. at 388:20-25.

3

confirmed that the Burgan Account was the sole source of funds in the Chase Savings Account. *See* Hearing Tr. at 330:13 – 331:6, 390:6 – 392:7.

Ms. Berker also testified that the sole source of funds in the Burgan Account consisted of monies from "business [Ms. Berker's father, Feyyaz Berker] did all over the years and [from] his assets [that] are being managed by a portfolio manager." *Id.* at 390:6 – 392:7. Ms. Berker's testimony is supported by the Declaration of Feyyaz Berker, Sinan's maternal grandfather, who declared that Sinan received money "via wire transfers from the Burgan Account to Sinan's American bank accounts," and that neither "the Burgan Account [n]or any other account which I have held has []ever contained funds belonging to Cem [Uzan] or any other of Sinan's paternal family members." Declaration of Feyyaz Berker ("F. Berker Decl.") in Support of Sinan's Evidentiary Submission and Memorandum of Law, Docket No. 990, ¶¶ 9-10.[5]

Similarly, Sinan has accounted for the source of all monies in the Chase Checking Account. The primary source of funds in the Chase Checking Account is transfers from the Chase Savings Account. Sinan Decl. ¶ 5; Intervener's Ex. 9. In addition, however, the Chase Checking Account contains deposits from Sinan's work at Hub Surgical, a position he has held since January 2013. *Id.* These two sources of funds (with transfers from the Chase Savings Account representing the overwhelming majority of the deposits) represent the sum total of monies in the Chase Checking Account and, likewise, reflect the source of all funds currently

---

[5] To the extent Motorola baselessly questions the source of funds in the Burgan Account (though there is no genuine dispute), Sinan has previously offered to provide the Court with video linked testimony from his maternal grandfather, Feyyaz Berker, whose businesses provide the source of funds in the Burgan Account. Hearing Tr. at 250:8-14, 318:6-21. Given Mr. Berker's age of 90, he was unable to come to the United States to provide live testimony at the Evidentiary Hearing. The Court informed Sinan that such testimony would be unnecessary unless it found there to be a dispute of material fact on which Mr. Berker's testimony would shed light. Sinan stands ready to provide Mr. Berker's testimony by video-link in the event that the Court believes it would be necessary to reach a resolution on that issue.

being restrained by Motorola in the Chase Accounts. The grand total of monies in the Chase Accounts is $9,037.75.

Motorola has never presented any evidence to refute the source of funds in the Chase Accounts.[6] Nor has Motorola presented any evidence connecting a Judgment Debtor to the monies contained in the Chase Accounts – because Motorola has no such evidence.

### *The Assets Held by Ankaa*

Ankaa is a limited liability company that Sinan formed in 2012 in order to pursue investment opportunities in the technology industry. Sinan is the sole member of Ankaa. Ankaa has a single asset, a $500,003 equity investment in a video streaming company called Streamworks. Hearing Tr. at 317:8-18. Ankaa's investment in Streamworks was funded through a loan from Sinan's maternal grandfather, Feyyaz Berker, a fact evidenced by a loan agreement between Sinan and Mr. Berker. Intervener's Ex. 5. The source of the funds used to invest in Streamworks was confirmed by Mr. Berker, who declared that, "In addition to a monthly allowance, I provided Sinan with a $500,000 loan so that he could make an investment in a video streaming business." F. Berker Decl. ¶ 11.

Again, Motorola has never presented any evidence to refute the source of funds used by Ankaa to make the Streamworks investment. Because, again, there is no such evidence.

### *Sinan's PayPal Account*

The length to which Motorola has gone to interfere with Sinan's life is illustrated vividly by Motorola's restraint of Sinan's PayPal account. Despite having restrained Sinan's PayPal account – an account designed and set up to make internet purchases – Motorola has failed to identify even a single asset in that account, let alone establish that any Judgment Debtor has any

---

[6] Nor does Motorola appear to dispute that the Burgan Account is the sole source of all funds in the Chase Savings Account. *See, e.g.*, Hearing Tr. 339:2-10, 339:14-15.

5

interest in the account. Indeed, since Sinan intervened in the Litigation, Motorola has not, in any submission to the Court or at the Evidentiary Hearing, even made reference to Sinan's PayPal account.

## DISCUSSION

The Extension Order should be vacated as to Sinan for the simple reason that Motorola has not, as required by CPLR § 5222, shown that any Judgment Debtor has any interest in the Restrained Property and, therefore, any attempt at executing on the Restrained Property would be futile. And because of that futility, Motorola cannot demonstrate necessity for the extension, as required by CPLR § 5222(b).

**A.     Restraints Under CPLR § 5222(b)**

"In general, judgments cannot be satisfied with assets of third parties against whom the judgment does not run." *AG Worldwide v. Red Cube Mgmt. AG,* No. 01 Civ. 1228, 2002 WL 417251, at *2 (S.D.N.Y. Mar. 15, 2002) (Lynch, D.J.) (citing *Grupo Mexicano v. Alliance Bond Fund*, 527 U.S. 308 (1999)). Thus, CPLR § 5222(b) mandates that Motorola show, in order to restrain Sinan's assets, that a Judgment Debtor has a direct interest in the specific property to be restrained. Section 5222(b) precludes a court from authorizing a restraint if the judgment creditor has not made that requisite showing. The relevant portion of the provision states:

> A restraining notice served upon a person other than the judgment debtor ... is effective only if, at the time of service, he or she owes a debt to the judgment debtor . . . or he or she is in the possession or custody of property in which he or she *knows or has reason to believe the judgment debtor . . . has an interest* . . . . All property in which *the judgment debtor . . . is known or believed to have an interest* . . . shall be subject to the notice.

CPLR. §5222(b) (emphasis added); *see also Sumitomo Shoji New York, Inc. v. Chemical Bank New York Trust Co.*, 263 N.Y.S.2d 354, 358 (Sup. Ct. N.Y. Cty. 1965) (emphasis added), *aff'd mem.*, 25 A.D.2d 499, (App. Div. 1966); *AG Worldwide*, 2002 WL 417251 at *8 (stating that a

restraint under § 5222(b) can "reach [only] property and debts with [a direct] connection to the judgment debtor" and that if a third-party garnishee "do[es] not have property or debts in which the judgment debtor has an interest, the restraining notices are not effective").

In May 2014, the Court contemplated that, in order to continue the restraints on the Restrained Property, Motorola would be required to demonstrate that a Judgment Debtor has a direct interest in the Restrained Property. At the Evidentiary Hearing, the Court stated that

> If the property that the person has is not restrained property [pursuant to CPLR § 5222(b)], that's a separate defense. And [the issue] we may have to reach . . . if I determine him to be an Uzan Proxy . . . is he holding assets that are not attachable in any event.

Hearing Tr. at 10:17 – 11:4; *see also id.* 21:1-8 ("Let's assume he is a proxy but let's assume that he also . . . has some job that has nothing to do with the Uzans and he gets some salary. [I] think it's not a proxy issue, but it is an issue."), 22:8-11 ("Assuming he's an Uzan Proxy under your definition of proxy, are you saying you can attach monies that he realized as personal salary that had nothing to do with the Uzans?").

While Sinan maintains he is by no means an Uzan Proxy, irrespective of that issue which remains subjudice, there is no basis to extend any restraints on the Retrained Property.

**Extension of Restraints Under CPLR §§ 5222(b) and 5240**

Under CPLR § 5222(b), a restraint on assets expires by its own terms a year from service. When a judgment creditor seeks leave of court to extend the duration of a restraining order, "the judgment creditor must satisfy the court as to the necessity of the extension." *Medi-Physics Inc. v. Cmty. Hosp. of Rockland Cnty.*, 432 N.Y.S.2d 594, 596 (N.Y. Cty. Ct. 1980); *see also* Seigel, Practice Commentary, McKinney's, CPLR C5222:7. If the judgment creditor is unable to show the court that it would be able to execute on (*i.e.*, turn over) the property restrained, the judgment creditor cannot demonstrate need for an extension. *Medi-Physics*, 432 N.Y.S.2d at 596.

7

Here, Motorola has obtained vast document discovery from Sinan and a multitude of third parties (some known to Sinan based on the evidence presented during the Evidentiary Hearing and most unknown to Sinan). Motorola also took Sinan's deposition in October 2013. Yet, two years after obtaining the *Ex Parte* Restraining Order, Motorola has not submitted any evidence of a Judgment Debtor's interest in the Restrained Property. The simple fact is that no Judgment Debtor has any interest in the Chase Accounts, Ankaa, or Sinan's PayPal account. Sinan has proffered credible and definitive evidence that his maternal family (and, ultimately, his maternal grandfather, Mr. Berker) is the (i) sole source of funds in the Chase Accounts (in addition to Sinan's paychecks) and (ii) from which Ankaa made its investment in Streamworks. And, as Motorola has never even contested, Sinan's PayPal account contains no material assets to restrain, let alone assets connected to a Judgment Debtor.

Indeed, if there were any doubt regarding the Restrained Property, during the Evidentiary Hearing, after Sinan's counsel finished his examination of Sinan, and Motorola was preparing for redirect examination, the Court asked Motorola "if there is anything about what I will call the independent monies that [Sinan] alleges he received that are presently being held, whether you wanted to challenge his assertions of where he got that money, that would be relevant." Hearing Tr. at 337:20 – 338:4. The Court went on to state that

> If [Sinan] is holding money that is directly traceable to money that is coming from the judgment debtors, then even if he is just ignorant of that or the unwitting pawn of the situation, he might still be liable to turn that over to Motorola. . . . So, if you have evidence that bears on that . . . you can either put it in independent of him . . . or if you think he does have knowledge of it, you could ask him about it.

*Id.* at 339:16 – 340:1. In response to the Court's request, Motorola provided no additional evidence and could not even muster a single probative question on the subject. The fact was then, and remains, that the Restrained Property has no connection to the Judgment Debtors.

In light of Motorola's failure to show that any Judgment Debtor has any interest in any of the Restrained Property, Motorola cannot demonstrate necessity for an extension of the restraints on the Restrained Property. Therefore the Court should vacate the Extension Order as to Sinan's Restrained Property.

**LOWENSTEIN SANDLER LLP**

By: _____
Ryan M. Wilson
Zachary D. Rosenbaum
1251 Avenue of the Americas
New York, NY 10020
(212) 262-6700
rwilson@lowenstein.com
zrosenbaum@lowenstein.com
*Attorneys for Intervener Sinan Uzan*

Dated: February 18, 2015

9