UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------x
MOTOROLA CREDIT CORP., et al.,       :
                                     :
              Plaintiffs,            :        02 Civ. 666 (JSR)
                                     :
      v.                             :        MEMORANDUM ORDER
                                     :
KEMAL UZAN, et al.,                  :
                                     :
              Defendants.            :
----------------------------------x

JED S. RAKOFF, U.S.D.J.

     For over a decade, plaintiff Motorola Credit Solutions

f/k/a Motorola Credit Corporation ("Motorola") has been trying

to collect billions of dollars in judgment from defendants Kemal

Uzan, Murat Hakan Uzan, Cem Cengiz Uzan, Melahat Uzan, Aysegul

Akay, and Antonio Luna Betancourt (the "Uzans").[1] Relying on a

web of proxies, the Uzans have evaded payment. In 2012, the

Court permitted Motorola to serve ex parte discovery requests on

third parties to gather information about "[d]efendants' and/or

their agents' assets or whereabouts." Order Regarding Service of

Ex Parte Discovery Requests, No. 1:02-cv-00666-JSR (S.D.N.Y.

Nov. 19, 2012). In 2013, Motorola served subpoenas on the New

York branches of three foreign banks, "Bank 1," "Bank 2," and

"Bank 3."

---

[1] The history of this litigation is set forth in the Court's previous
decisions in this matter, familiarity with which is here presumed. See, e.g.,
Motorola Credit Corp. v. Uzan, 73 F. Supp. 3d 397, 398-400 (S.D.N.Y. 2014).

The banks have refused to comply with the subpoenas with
respect to certain material located outside the United States.
Initially, the Court agreed with Bank 1's objections, on
international comity grounds, to producing documents held in the
United Arab Emirates (the "UAE") and Jordan. *Motorola Credit
Corp. v. Uzan*, 293 F.R.D. 595, 601 (S.D.N.Y. 2013). However,
Motorola moved for reconsideration, and, after oral argument and
full briefing, the Court revisited its prior decision and
ordered all recipients of Motorola subpoenas to comply with them
even in the UAE and Jordan. *Motorola Credit Corp. v. Uzan*, 73 F.
Supp. 3d 397, 405 (S.D.N.Y. 2014). The banks have now moved for
reconsideration in light of the Supreme Court's decision in
*Daimler A.G. v. Bauman*, 134 S. Ct. 746 (2014), and the Second
Circuit's decision in *Gucci America, Inc. v. Bank of China*, 768
F.3d 122 (2d Cir. 2014).

The Court first addresses whether reconsideration is
appropriate. Although the standard is "strict," *Shrader v. CSX
Transp. Inc.*, 70 F.3d 255, 257 (2d Cir. 1995), reconsideration
is justified when there is "an intervening change of controlling
law." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d
1245, 1255 (2d Cir. 1992) (citation omitted). *Daimler* and *Gucci*
significantly changed the law of personal jurisdiction. Both
were decided after this Court issued its December 22, 2014 Order

compelling compliance with the subpoenas.[2] In light of the
intervening changes wrought by *Daimler* and *Gucci*, the Court
grants the banks' request for reconsideration.

The banks raise several arguments against compelling
compliance, but, in this Memorandum Order, the Court addresses
only the threshold question of personal jurisdiction. A court
"must have personal jurisdiction over a nonparty in order to
compel it to comply with a valid discovery request." *Gucci*, 768
F.3d at 141. Personal jurisdiction over a foreign corporate
entity depends on (1) the laws of the forum state and (2)
whether jurisdiction over the foreign entity comports with
constitutional due process requirements. *Licci ex rel. Licci v.
Lebanese Canadian Bank, SAL,* 732 F.3d 161, 168 (2d Cir. 2013).
In light of the constitutional obstacles to asserting
jurisdiction over the banks, the Court does not reach the
question of whether New York's long-arm statute allows for
jurisdiction over them.

The banks argue, correctly, that *Gucci* prevents this Court
from asserting general jurisdiction over them. General
jurisdiction depends on whether "the corporation's affiliations
with the State in which suit is brought are so constant and
pervasive 'as to render [it] essentially at home in the forum

---

[2] *Daimler* was decided on January 14, 2014; *Gucci* was decided on September 17,
2014.

3

State.'" *Daimler AG v. Bauman*, 134 S. Ct. 746, 751 (2014)
(quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.
Ct. 2846, 2851 (2011)). Applying *Daimler* in the context of non-
party discovery, the Second Circuit held that a district court
could not enforce a subpoena against a non-party foreign bank
simply because it operated branches in the United States. The
bank in *Gucci*, Bank of China ("BOC"), was incorporated and had
its principal place of business abroad. Moreover, "BOC [had]
only four branch offices in the United States and only a small
portion of its worldwide business [was] conducted in New York."
*Gucci*, 768 F.3d at 135. The Second Circuit concluded that the
bank was not "at home" in New York and could not be subjected to
general jurisdiction here. *See id.*

   *Gucci* is on all fours with the banks in this case. The
Court has received no indication that the banks' contacts with
New York would be materially different from those of BOC
considered by the Second Circuit in *Gucci*. All three banks are
incorporated and maintain their principal places of business
abroad, and no "exceptional circumstances" exist that would
otherwise support general jurisdiction over them. *Daimler*, 134
S. Ct. at 761 n.19; *see* Bank 2 Jan. 30, 2015 Mem. at 6; Bank 1
Jan. 30, 2015 Mem. at 8 (quoting *Gucci*, 768 F.3d at 126). None
of the banks are "at home" in New York.

Motorola argues that the banks have waived their objections to personal jurisdiction. First, Motorola argues that the "banks have consented to jurisdiction by appearing in the case." P. Jan. 30, 2105 Resp. Mem. to Banks 2 & 3 at 4; P. Jan 30, 2015 Resp. Mem. to Bank 1 at 3. It is true that none of the banks presented objections to personal jurisdiction when they first appeared. However, "a party cannot be deemed to have waived objections or defenses which were not known to be available at the time they could first have been made." *Hawknet, Ltd. v. Overseas Shipping Agencies*, 590 F.3d 87, 92 (2d Cir.2009) (citation omitted). The banks' objections to jurisdiction were not available before *Daimler* and *Gucci*. *See Gucci*, 768 F.3d at 135-36. Therefore, the banks did not waive their objections by failing to raise them earlier.

Second, Motorola contends that the banks have constructively consented to the Court's jurisdiction "by obtaining a license to conduct banking operations in New York" under State and federal law. P. Jan. 30, 2105 Resp. Mem. to Banks 2 & 3 at 4; P. Jan 30, 2015 Resp. Mem. to Bank 1 at 3. Under New York Banking Law § 200, Banks 1 and 2 must register with and be licensed by the Superintendent of the Department Financial Services, who may receive service on their behalf. Bank 3 holds a federal banking license. *See* Bank 3 March 25, 2015 Suppl. Letter-Brief at 1-2. However, to find that

satisfaction of requirements mandatory for operation of a branch
in New York signal constitutional consent to jurisdiction would
directly contradict *Gucci*. *Gucci* stands for the proposition that
mere operation of a branch office in a forum - and satisfaction
of any attendant licensing requirements - is not
constitutionally sufficient to establish general jurisdiction.
Accordingly, the Court finds that the banks did not consent to
this Court's jurisdiction by registering or being licensed under
New York Banking Law § 200 or federal law.

The banks contend that *Gucci* also resolves the question of
specific jurisdiction. They read *Gucci* as requiring a connection
between "the nonparty's contact with the forum and the discovery
order at issue." *Gucci*, 768 F.3d at 141. Specifically, the banks
argue that there is no basis for specific jurisdiction here
because the documents at issue are located abroad. *see* Bank 1
Jan. 30, 2015 Mem. at 8-9; Bank 3 Jan. 30, 2015 Mem. at 10; Bank
2 Jan. 30, 2015 Mem. at 6-7.

The Court declines to adopt this view in the abstract.
*Gucci* did not establish a clear standard for determining
specific jurisdiction over nonparties in the context of
discovery requests. The Second Circuit observed that "the
Supreme Court has not . . . addressed specific jurisdiction over
nonparties," *Gucci*, 768 F.3d at 137, and stated that "[a]t least
one circuit has translated [the test for specific jurisdiction

6

over defendants] to nonparty discovery requests by focusing on
the connection between the nonparty's contacts with the forum
and the discovery order at issue." *Id.* at 141-42 (citing
*Application to Enforce Admin. Subpoenas Duces Tecum of the
S.E.C. v. Knowles,* 87 F.3d 413, 418 (10th Cir. 1996)). The Court
does not read this language to imply that no specific
jurisdiction exists over nonparties for the purposes of
discovery of documents located abroad. Taken to an extreme, this
position would erect *Gucci* as a constitutional barrier to all
discovery requests directed at material held abroad by
nonparties.

Motorola's briefs do not directly address the question of
specific jurisdiction. Because the Court granted the banks'
motion for reconsideration, the Court will provide Motorola and
the opposing banks the opportunity to submit further briefing
addressing specific jurisdiction, keeping in mind that specific
jurisdiction is the sole possibility for the Court to exercise
jurisdiction over the banks.

For the foregoing reasons, the Court, upon reconsideration,
finds that it lacks general jurisdiction over the non-party
banks. But the Court reserves the question of specific
jurisdiction. The parties are directed to jointly call Chambers
by September 17, 2015 to schedule briefing on that issue.

7

SO ORDERED.

Dated:    New York, New York
           September 9, 2015

JED S. RAKOFF, U.S.D.J.